The case for today is 2013-11305, Janvey v. The Golf Channel You have one issue and one question in this $5 billion Ponzi scheme case that's back in front of you for I don't know how many times we've been back in front of this court. But let me frame the issue. This is summary judgment. Did the Golf Channel, the defendants below, did they prove conclusively that they provided reasonably equivalent value, which is their burden to prove on this statute? How do we get to the answer? We just ask one question. And as we all learned a long time ago, if you ask the wrong question, you never get to the right answer. And that's where things went astray here. The only relevant question to ask is what was the evidence? What was the evidence that what Golf Channel provided for those millions and millions of dollars it received? What was the evidence that that had any value to the creditors, the ones that are standing in long line, more than 18,000 people who got stiffed in this Ponzi scheme? That is the standard under the circuit cases from this circuit. That is the standard under the statute. That is the standard under the Texas appellate cases. You ask what, if anything, was transferred that was of benefit to the creditors. And if the answer is nothing, then they don't win. And they certainly don't win conclusively under the summary judgment standard. And the one thing I'll call your attention to that is so odd about this case, this isn't just any summary judgment case. This is a summary judgment case that deals with a pivotal issue on the one claim that this receiver has at his disposal to try to recover money that never should have been squandered by Allen Stanford. And there is no discussion in the district court opinion of Rule 56 and the summary judgment standard. There is no discussion in Golf Channel's brief of the summary judgment standard. And I find that remarkable. And the reason there is no discussion of that is because, as I said a moment ago, the district court did not ask the right question. He posed a series of different questions. And once he did that, Rule 56 just went right out the window. Did the district court look at reasonably equivalent value not from the perspective of the investor creditors but from the perspective of the Golf Channel selling advertising services? He says, well, they wouldn't be in this business if it wasn't reasonably equivalent. Can you explain to me? I will, Your Honor, and thank you for that because that goes to the heart of it. First, let me point out that the creditors who have been left with nothing are not just investors. We have more than 18,000 creditors, the vast bulk of which are investors, but there are many other creditors that haven't been paid. Are they creditors? Well, that's interesting. Because they say for half of their brief that they should be considered creditors, and I didn't think they were. I thought they were looked at as the person to whom the exchange was. They weren't looked at in their creditor shoes. That's correct, Your Honor, and this is a classic case of having your cake and wanting to eat someone else's, too. Because in this circumstance, back to your question, the question that should have been asked is what did they provide that was of any value to the creditors? Those are the Fifth Circuit cases. That's the standard. But instead, Judge Godbee asked a series of different questions, all from their point of view. He asked, who is an innocent trade creditor in this case? Is this a consumables transaction? What is the better public policy here? If I apply the law, will it cause their business model to crash? Those are the questions, plainly. These are right out of his opinion. Those are the questions he asked. He then answered all of those questions, and that, of course, forced the result in favor of the Gulf Channel. But the trouble with all those questions is they have nothing to do with reasonably equivalent value. Why do I say that? Well, let's talk about the first one he posed right in the first paragraph of his order. These people look to me like an innocent trade creditor. If they are, could they file a claim into bankruptcy like all the other trade creditors? Not only can they, but they have in the most remarkable circumstance, Your Honor. Because it's not enough that they got $6 million in cold, hard cash already. Right before this Ponzi scheme collapsed, Mr. Stanford was so in need of new salesmen and new investors and so impressed with the success of this co-branding strategic partnership, he signed up for another seven years and $14 million worth of advertising. So that's a claim in the bankruptcy? That's the claim. So they are creditors in this class of creditors, but they're not in the shoes of the creditors as they come here in the Tufta statute. Absolutely correct. Absolutely correct. Because we have to step back and look at why things went so terribly wrong here. And at one level it's obvious we mixed the good faith and reasonably equivalent value standards and came up with something brand new, an innocent trade creditor exception. And let me draw your attention to this. There's a lot in their brief about we're trying to get some absolute Ponzi scheme exception and this and that. Well, actually we're not. We're not. We proved our fraudulent transfer case. At that moment in time, the burden shifts to them to prove both of those things, not just one, not a commingling of the two, but both. And on the reasonably equivalent value standard, that's a purely economic question. It doesn't ask who is innocent. It doesn't ask the other question that Judge Godbee posed, which was remarkable, which he says, well, we have two classes of creditors, and I think that investors and salesmen have more of an obligation to do due diligence and investigate than these people. Okay, that's public policy. Is there an innocent trade creditor exception under Tufta? No. Or under the case law interpreting Tufta? No. But I'll tell you what, the legislature did know how to create exceptions and exempt different kinds of people and different kinds of transactions. Look at the statute. The statute specifically exempts, for example, a defendant or would-be defendant who wants to enforce a lien on a valid Article IX security interest. The statute specifically says that is not touchable as a fraudulent transfer. Okay, fair enough. What does that tell us? That tells us the legislature knew how to create exceptions. It also tells us it is not the job of a federal court interpreting a state statute to come up with a new public policy exception, which is what happened here. But should the court look for ways to interpret the statute so that it doesn't create absurdities, and perhaps Judge Godbee thought there was an absurdity, because could you go after the electrical company? Absolutely. I'm so glad you brought that up because not just this trustee or this receiver, but all trustees and receivers who sue after these Ponzi scheme cases collapse, they're met with the same argument by the defendants. Oh, my goodness. You can't make me liable. I'm innocent. If I'm liable, that means you're going to sue the janitor and the gardener and the gas company and all of that litany and the barbecue sandwich guy. So where do we come up? What is the response to that? I'll quote Judge Posner from his famous Scholes v. Lehman Ponzi scheme case, which a panel of this court has adopted, and arguments just like that. This can't work this way against me. I can't run my business if I'm going to be held liable. This isn't fair. Those arguments were made to him by one of the defendants in his case, and here was his perfect response. You know what? You are arguing for a different standard depending on who you are, whether you're the gardener, whether you're the salesman, whether you're this. And you know what? The statute does not make a distinction between who you are. That is a job for the legislature. And he went on to say, importantly, importantly, if what a court does is engage in kind of an ad hoc balancing of the equities, then the court is, and these are his words, radically rewriting the statute. So this statute allows you to go after the electrical company? Absolutely. Did you? Or did the trustee? So the question is, Your Honor, what are the facts? I can sit here and I can dream up a scenario where a gardener, where a service provider, might in fact have a lot of trouble meeting either good faith or reasonably equivalent value. I can also imagine facts where they do just fine. But whatever those people are, these people are not the gardener and the electric company. So we don't have to address whether this extends to the electric company in this case? No. And one of the questions I expected, because it's a fair question, is what's your limiting principle? Are you going to sue? That is what I'm asking. Exactly. Are you going to sue everybody under the moon and the stars? And the answer is the statute and how reasonably equivalent value is defined is the limiting principle. And all it asks is that simple question. Regardless of who you are, janitor, electric company, whatever, did you provide something, first of all, that was of any value from the point of view of the creditors? And then and only then do we ask that secondary question, okay, was it reasonably equivalent to what Mr. Stanford provided in this case, which is the $5.9 million in cash? And that's why we have this so backwards. They cite a provision in the statute. Judge Godbee cited it as well. He said, well, this was an arm's-length transaction, and look at the statute. It says if it's within a range of values that the transferor transferred the asset. Well, wait a minute, wait a minute, wait a minute. They're not the transferor. How do we know that? We know that because when that section of the statute uses the word assets, assets is a defined term in the statute, and it's defined as property of the debtor. Who's the debtor? Not them, Mr. Stanford. So that section of the statute doesn't do anything for us. Why? Because it says what's the range of values of what Mr. Stanford transferred to these people? Well, there's no dispute about that. He transferred cash. The value of cash is cash. What's in dispute here is what came back. It's pure economics. At the moment the money went out, $5.9 million, at that moment the estate was depleted by $5.9 million. Then you ask the question, what came back? And not just anything. What came back that was of any value to the creditors? And if the answer is nothing, then they can't possibly win, and they can't possibly win conclusively as a matter of law on the sermon judgment stand. So PR and good business, goodwill, whatever you get from advertising, that's of no value? And this is the big distinction. It's not just what they provided, but who they provided it to. Judge Godby talked about the speculative investment cases. You provide some intangible, not a hard asset. How do we know there's value for the creditors? And he cited the right case and then just completely missed the point. It's the aircraft case, the Butler Fairchild Manufacturing, where you had two struggling businesses, and one pays money to try to prop the other one up. Why? Not out of Christian charity, but because if one business goes down, it's going to drag the other one with it. Now, it didn't work out. It was, in effect, a speculative investment. But there the difference is, the Fifth Circuit said there is specific evidence showing specific benefits that could have accrued to the creditors had it worked out. But there's no estate for an ongoing business in a Ponzi scheme. We're not trying to enrich an estate like you might be doing, because it's a Ponzi scheme, and so the whole thing exists for the purpose of the fraud. Exactly. But that is a little bit problematic back to the limiting principle, because that almost means that there's nothing that can be done for the Ponzi scheme. Anything that seems to be adding value really isn't, because it's just going to the Ponzi scheme. And so I think the electricity company question would have to logically be answered the same way that you want us to answer this question. Now, go back. Let's go back to that group. Let's take the janitor and the landscaper. Let us suppose they did their janitor and landscaping job. They fixed the building Mr. Stanford worked in. They kept the grounds nice. The pretty building downtown. Could you say. Galleria. Exactly. Could you say that there was evidence of value to the creditors? Yes. Why? Because what happens when the receiver comes in? He's got a nice pretty building. That can sell the building. Okay. Or. But electricity you can't. I guess you keep the building running so it's not deteriorating. Exactly. That's what you argue. Exactly. And when I ask you, I have read their brief 25 times, and I cannot find the evidence where they even suggest here is what we did, and here is how. It even might have had a benefit to the creditors. They just don't talk about that question because they know they come up completely short a complete failure of proof. And I'll reserve what little time I have for rebuttal unless the court has any more questions for me. Thank you. Thank you. May it please the court. Ted Daniel on behalf of the Golf Channel. Golf Channel simply sold airtime to Stanford for Stanford's advertising use. They designed it. They came up with the commercials. They decided what to do on the Golf Channel. That was a legal contract. This is not a Warfield v. Byron situation where an investor was trying to justify his false profits through alleged broker services in connection with the sale of an illegal investment contract. What do you say the summary judgment evidence is of the reasonably equivalent value that the creditors of Stanford got? The value of the airtime. How is airtime valuable to the creditors? Well, I disagree with counsel's emphasis on value to the creditors. That is not in the statute. The affirmative defense that we relied upon gives a transferee like the Golf Channel an out if they took in good faith, and they did not challenge that in the summary judgment record, and if they provided reasonably equivalent value. And the definition of a reasonably equivalent value is in Tufta 24.004D, and it says reasonably equivalent value includes without limitation a transfer within the range of values for which the transferor would have sold the assets in an arm's length transaction. There is no mention of debtor in that definition. It is party neutral. But you're not the transferor under Tufta, are you? Well, we were the transferor. We transferred our airtime, Your Honor. But you're not the transferor under that part of Tufta. That provision is used as explained by the opposing counsel. Do you disagree? He says that that's used to determine what is the value of something, and we don't need to use that provision because we know that the actual numeric value is the value of what they gave. It's what the transferor in that sentence is what does the entity in bankruptcy, whatever we call that, gets. What did they give? Mm-hmm. So they gave money under an arm's length transaction. Right. So their money is what you measure. So that's not doesn't answer the question of what value did the creditors get from the what you gave? Well. Not you personally. Yeah. They wanted to find value in a very limited way. They want to say that the estate or Stanford had to get a tangible asset in exchange for the payment of money that when the Ponzi scheme is discovered, they can go grab and sell for the benefit of all the creditors, not just the investors, but all the creditors. And the Butler case and the other cases cited by Judge Godbee, in his opinion, do not so limit value. Okay. What about the Warfield case? I'm sorry. You asked the question for me. Yeah. Warfield is going to be going in a different direction than the one you wanted us to take. Yeah. Well, Warfield, again, was an investor who got a return on his investment. He got false profits, as they called them. And he tried to justify those false profits by saying that he had performed brokerage services. But that wasn't part of the holding, it seems to me. The argument was there that this was not good faith at the very reasons that you're talking about. We held there's no reason to conclude anything about good faith because he did not receive the transfers in exchange for reasonably equivalent value. The primary consideration in analyzing exchange of value is the degree to which the transferor's net worth is preserved. And I think it's fair to say value creditors, the net worth of the estate at the time of the receivership. And this is the way this panel put it. If it takes cheap to contend in exchange for payment receipt, the Ponzi scheme benefits the receivers. So the estate, or here, the transferor's net worth, Mr. Stanford's net worth, the company's net worth, was not preserved in any way by maximizing the reach of the Ponzi scheme. Well, I think it was under the statute. I mean, what came into the estate, other than the opportunity of more draining of funds from innocent investors and whatever money was in the estate already? They got the right to advertise on the Golf Channel under a legal contract at market rates. OK, but the broker, you want to emphasize the broker's potential misdeeds in advance of this. But he was brokering the services of that particular transferor, I guess, that particular Ponzi scheme promoter. And he was promoting in the same way with respect to your client, who I've watched that as well, so I'm happy to know that there are sponsors still out to keep going. But in this case, Stanford's goodwill that it was creating and the expansion of its market, just like Warfield, was not in any way contributing to the transferor's net worth. It was decreasing, if it was effective, the transferor's net worth. Well, again, Your Honor, you judge the consideration at the time of the transaction. At the time of the transaction, there was a Ponzi scheme going on. I understand. But they signed a legal contract with us. We were in good faith every step of the way. Just like the investors didn't know about the Ponzi scheme, we didn't know about the Ponzi scheme. Well, the same thing in Warfield. We're not going to get into his good faith, the court said. That is irrelevant. And should we substitute the name of TGC in there? Arguably, your good faith is irrelevant. It's what did the estate of Stanford get? Did you improve, using the example that opposing counsel did, their buildings? So it's a better asset at the present time. Did you do anything for the estate that was of even a benefit at that time? Well, we didn't provide a physical, tangible asset in exchange for the payments that we got. But that was not the contract. Well, you gave him fair value, you were saying, that you charged. And we're not really talking about the rate that you charged. Whatever that rate was, it was a reasonable rate for what you gave. But the purpose is not what Stanford got out of it. It's what the estate ultimately got out of it. And it seems fair to me to say it got zero. Well, I think every time there's a consumables transaction, as soon as you consume whatever you're getting here, it was airtime to advertise. That's it. And Judge Godbee made that point in his opinion. And there's no difference between us and the electric company. The electric company let Stanford keep the lights on so they could continue to do business.  I assume that if the electric company would bring in an affidavit, or they would bring in an affidavit to say the building is ‑‑ I guess the electric company would bring in an affidavit to say that this adds value to the estate, because it keeps the humidity and all the things in the building correct, because the A.C. can run. And that makes the building valuable, because if a building stands dormant in Houston in August, it loses value. I mean, I assume they would bring an affidavit from some real estate person that said it was helpful. What affidavit or other summary judgment evidence do you have in the record that shows this gave value to the estate or the creditors? Well, as I've said, we did not put on any evidence, and we don't think we needed to put on any evidence that we created with the money we got a tangible asset, because that's not what our contract was for. Okay. And, you know, you mentioned the electric company. It's the same issue with the supplier of office supplies or an employee. What case supports your interpretation? I'm asking you, I guess broadly, the statutory language or a case that would support your interpretation, that you don't need to come forward with any evidence. Well, the Butler Aviation case that counsel mentioned, the World Vision case out of the Eleventh Circuit, both address this issue. And the comment, again, there is no definition of value in the statute itself that supports counsel's view that it has to benefit the creditors. That concept comes from a comment, comment two, to UFTA, not Tufta, but UFTA section three, where it talks about you look at these transfers from the perspective of the creditors. Are you saying that UFTA is not good authority for interpretation of Tufta? No, no, I think it is. I think it is. But Tufta has the separate reasonably equivalent value definition, which is not in UFTA. And I stand on my interpretation of that. I think it's party neutral. Okay. So what case would support you? Butler Aviation and the World. Those two cases would support the outcome here. And let me ask you that, since you've cited this case from the Eleventh Circuit, which are you, you had said something in the brief that the Eleventh Circuit's interpretations of UFTA are somehow binding in the circuit. You don't, that's not correct, is it? We can use the Eleventh Circuit to be helpful, persuasive authority, but you're not saying there's any binding authority of the Eleventh Circuit cases, although we have great respect for the Eleventh Circuit. It's persuasive authority, right? Yes. So if the brief says something else, that's just incorrect. I think that, well, I do think that's what we said. Okay. Because Judge Godme said for purposes of UFTA states, there are no conflicts of laws, and he can look to the laws in other states. Right, and you're not saying Florida would give a different result, right? You're using Texas Tufta, and you're happy to use Texas Tufta. Well, that's what Judge Godme used. And so that's what you're happy to use on appeal here? Yes. Okay. You also argue that, well, the Goff Channel is a creditor, and so they can be considered a creditor, and so that that's a legitimate inquiry. What authority do you have for that proposition? Well, UFTA's not, I mean, it's not limited to a certain subset of creditors. It refers to all creditors. But you're not a creditor in this transaction. You're a creditor in the other transaction that you sought relief from in the bankruptcy court. That's right, under the claim process. But you're not a creditor for this transaction. In this transaction, you're not a creditor. Well, we are a creditor in the receivership. We filed a claim. But you're a creditor in the receivership for the months that you didn't get the cash for. And for breach of the contract that was entered into that was never performed. That's right. But what they're trying to do is redistribute the money to the investors, not to us. And as Judge Godbee pointed out, he thinks that's bad public policy. And it shifts the risk of loss as between Golf Channel, who provided airtime under a legal market arm's length contract. It shifts the loss to the Golf Channel as opposed to the investors. Isn't that a matter for the legislature? I think the judge can take that into account, connection with this ruling. And what authority do you have that we can take into consideration that we think it's bad public policy, and so we're not going to do this even though the statute would say we should? I don't have any authority for you on that.  I also don't see any difference between us and an investor who got a return of his principal before the Ponzi scheme was discovered. Why are we any different than that investor who got a return of his principal? Don't they get to go claw back from those people if they got during the relevant time period? No. They get to keep, if they got their principal. Back before the Ponzi scheme was discovered, then they get to keep it. Now, if they got false profits off their principal, they have to disgorge that. Did you have any other points that you wanted to make? I do not, Your Honor. Let me, but Butler Aviation, though, makes it clear, that's a Fifth Circuit case, 1993, that the only value that can be considered is not just tangible property or assets actually received. And that's where I think the receiver is wrong on their definition of value. Their definition of value is for the $6 million that Gulf Channel got paid, Gulf Channel had to provide a tangible, physical asset that somebody could grab onto and execute against if there was a Ponzi scheme. And I don't think you can read UFTA to say that. Well, I thought that they admitted that gardening services could be a benefit, even though that's not tangible. It's not services. Because if it increased value of something in the estate and they had affidavits to prove it, then that perhaps could be a reasonable good faith value. So that's an exception to the tangible. How about a landlord, Your Honor? Payments to a landlord. Rent paid to a landlord. That's no tangible asset. That doesn't affect a tangible asset. Employees who are working who got paid money.  And the electric company, it keeps the lights on, keeps the computers going, which allows the Ponzi scheme to continue. I don't see any difference between us. And again, I want to point out, we did not design the marketing materials for Stanford. We didn't design the commercials. All we did was sell them valuable airtime on the golf channel. And I think you're going to open up a big can of worms if you make us disgorge our money. I don't think that's the law, nor should it be the law. Thank you. I believe we have your argument. Thank you. Let me address Butler because I think it illustrates two things here. One, we're not arguing for this hard asset standard that counsel talked about. But look at Butler and why is Butler different from this case? First of all, Butler wasn't decided on the premise of this consumable issue. What happened at Butler? Struggling aircraft manufacturer gives money to buy fuel for the struggling airline. What happened to the fuel? Did they stockpile it? Of course not. They burned it up. Oh, does that make it a consumables case? Is there anything in that opinion about that? No. What did the Fifth Circuit say? There was specific evidence of specific benefits that would have accrued to the creditors if it had worked out. Starting with, if they kept the airline afloat, the aircraft manufacturer wouldn't have to take back $2.5 million in planes. And that would have been a benefit to the creditors. What is that point out here? The utter failure of proof on their part to show anything. He had 18 minutes and he couldn't give you anything. And that is why judgment should have been rendered for the receiver. This is a cross motion for summary judgment. We filed a motion for summary judgment, too. Our motion should have been granted. Their motion should have been denied. That's the relief the receiver seeks in this case. You seek not just vacating of their summary judgment. You seek the court to render summary judgment. To render judgment because of the utter failure of proof on their affirmative defense. He says, I don't have the burden. Okay, if we're going to follow the law, yes, he does. Thank you. Thank you.